# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3748-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

G.A.K.,

     Defendant-Appellant,

and

C.L.L.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF G.J.K., JR.,

     a Minor.

_____

Submitted January 17, 2019 – Decided February 22, 2019

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0231-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven E. Miklosey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Casey J. Woodruff, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant G.A.K. (father) and C.L.L. (mother) are the biological parents of G.J.K. (George or child), presently four years of age.[1] The father appeals from the March 23, 2018 judgment of guardianship terminating his parental rights to George; the mother does not appeal from this judgment. The father argues the Division of Child Protection and Permanency (Division) failed to

---

[1] We use initials or pseudonyms to protect the privacy of the parties, George, and the parties' other children.

A-3748-17T4

prove by clear and convincing evidence the four-prong standard codified by the Legislature in N.J.S.A. 30:4C-15.1(a).[2]

After reviewing the record and applicable legal principles, we reject the arguments the father advances and affirm substantially for the reasons expressed by Judge James R. Paganelli in his comprehensive written decision dated March 23, 2018. We will not recite in detail the evidence presented by

---

[2] These four prongs are:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

the Division in support of terminating the father's parental rights. Instead, we incorporate by reference Judge Paganelli's factual findings because they are well supported by competent evidence presented at trial. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). However, we briefly summarize the key facts and the court's principal findings.

The mother and father do not have any children together other than George. However, the father has an older son, J.K. (James), now age seventeen, and the mother has two sons, presently ages seven and nine. After George's birth, defendants lived in the same household with all of their children. In December 2014, the mother saw her two older sons performing oral sex on each other. The boys told her that James had done "bad things" to them and taught them how to perform oral sex. One of the boys claimed James made him "lick his butt."

The mother reported the incident to the police when the father failed to take any action against James. With the exception of James, the Division removed the children from defendants' home and placed them in resource homes. The Division filed a complaint, as well as an order to show cause seeking the custody of the children who had been removed, which the court granted. George was never returned to either defendant's custody.

Defendants thereafter separated, and the father obtained housing for James and himself. For the ensuing three years, the Division endeavored to provide services to the father and James designed to enable George to reunite with them. Although the father engaged in some services, he spurned others. More importantly, the father delayed in arranging for James to be evaluated for any disorders or problems that might put George at risk for harm if George and James lived in the same household. After James was finally evaluated and commenced sex offender psycho-education and treatment in January 2016, the father failed to transport James to many of his appointments with his psychologist. The father also did not ensure he and James submitted to other evaluations arranged by the Division.

The court concluded that George's safety, health, and development would be endangered if he were returned to his father's home, because the father failed to make sure James complied with recommended services that would assure George's safety. As the court stated:

> [F]or three years, the Division has attempted to work with [the father], through all of his self-constructed barriers, to reunify [George] with [the father] and [James]. [The father] is the party that refuses to follow recommendations to permit [George]'s safe reunification.

Moreover, [the father] is responsible to assure [George]'s safety. Even if [the father] does not believe the allegations or wants to support [James], he is required, at the very least, to have [James] evaluated and to follow the recommendations, to insure [George] can safely reside in the home. . . .

[T]his court is not looking to have . . . [the father] make a choice between his sons[;] however, absent his commitment and willingness to take all reasonable steps to protect [George], he poses a risk of harm to [George]'s safety, health and development because of his failure to address the allegations of [James]'s sexual abuse. . . .

[The father] has obscured a true understanding of the family dynamics and presentation. That course of conduct provides clear and convincing evidence that he cannot provide a safe and stable home for [George].

The court also noted that, at the time of trial, the father could not offer George permanency, and further delay of a permanent placement for George will harm him. George had bonded with his resource mother, who wants to adopt him. (The father declined to submit to a bonding evaluation). The court determined that if removed from his resource mother's home, George will suffer serious and enduring emotional or psychological harm.

In reviewing a case in which the termination of parental rights has been ordered, we remain mindful of the gravity and importance of our review. See N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 151 (2010) ("[T]he

6

process for terminating parental rights is a difficult and intentionally rigorous one that must be satisfied by a heightened burden of proof . . . ."). Parents have a constitutionally protected right to enjoy a relationship with their children and to raise them without State interference. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008).

However, this right is not absolute, as it is limited by the "State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447. The State has a strong public policy that favors placing children in a permanent, safe, and stable home. See In re Guardianship of K.H.O., 161 N.J. 337, 357-58 (1999).

In addition, a reviewing court should not disturb the factual findings of the trial court if they are supported by "adequate, substantial and credible evidence. . . ." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We defer to the trial court's credibility findings and, in particular, its fact findings because of its expertise in family matters, see N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010), unless the trial

court's findings are "so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing J.T., 269 N.J. Super. at 188-89).

We have examined the father's arguments the Division failed to satisfy the four prongs of N.J.S.A. 30:4C-15.1(a). After perusing the record, we conclude these arguments are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). Judge Paganelli's cogent opinion fully tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with In re Guardianship of K.H.O., 161 N.J. at 337; In re Guardianship of D.M.H., 161 N.J. 365 (1999); and N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591 (1986), and is amply supported by the evidence, mandating our deference. See F.M., 211 N.J. at 448-49.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3748-17T4